IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                    PLAINTIFF/RESPONDENT

v.                  Criminal No. 5:18-cr-50008-005

DERRICK HILL                                DEFENDANT/MOVANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Currently before the Court is a 28 U.S.C. § 2255 motion and addendum filed by the *pro se* Movant Derrick Hill ("Hill") (ECF Nos. 234 & 244) and the response of the United States ("Government")(ECF No. 240).   An evidentiary hearing is not warranted in this matter, as the § 2255 motion, the files, and the records in this case conclusively show that Hill is not entitled to relief.   *See* 28 U.S.C. § 2255(b); *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)("No hearing is required when the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which they are based").

## I.  BACKGROUND

On January 23, 2018, Hill, LaQueecha Nicholson ("LaQueecha"), Derrick Nicholson, Rubin Morrow, Johnny Nicholson, and Jeffrey Hollingsworth were charged in a fifteen-count indictment.  (ECF No. 1).   Hill was charged in Counts 1, 12-14, and 15.   Count 1 charged Hill and the other five Defendants with conspiracy to distribute methamphetamine from as early as September 1, 2016 and continuing to on or about January 23, 2018.   Counts 12 through 14 charged Hill with the distribution of cocaine on various dates during late November of 2017.   Count 15 charged Hill with being a felon in possession of a firearm on November 30, 2017.

1

On February 2, 2018, Hill was arraigned, entered a plea of not guilty, and was appointed an attorney, Jay Moore.   On May 29, 2018, Hill, pursuant to a written plea agreement (ECF No. 106), pled guilty to Count 1, conspiracy to distribute methamphetamine.   The plea agreement provided that if accepted by the Court, once the Court pronounced sentence, the Government would move to dismiss Counts 12 through 14 and Count 15.   (ECF No. 106).

The plea agreement set forth the following factual basis for the guilty plea:

a.   In late 2016 and continuing through early 2018 the FBI Safe Streets Task Force (SSTF) conducted an investigation into a local drug trafficking organization led by co-conspirator Derrick Nicholson.

b.   Beginning in January 2017, and continuing to on or about August 30, 2017, investigators conducted six separate controlled purchases of methamphetamine from Derrick Nicholson and his associates.

c.   On or about July 30, 2017, Derrick Nicholson was arrested by state authorities on unrelated firearms charges and was subsequently incarcerated at the Washington County Detention Center, at which point his wife and co-conspirator LaQueecha Nicholson assumed control of the organization.

d.   On September 8, 2017, the FBI obtained an order from the Court authorizing the interception of wire and electronic communications to and from a cell phone being utilized by LaQueecha Nicholson for a thirty-day period.   On November 15, 2017, the Court signed an order authorizing the interception of wire and electronic communications from two other cell phones being utilized by LaQueecha Nicholson.   During these wire and electronic interceptions, over twenty associates involved in the distribution of methamphetamine, as well as other drugs, were identified.   One of those associates identified is the defendant in this case, DERRICK HILL.

e.   From September 15, 2017, to November 28, 2017, Investigators with the FBI intercepted numerous communications between HILL and LaQueecha that related to the distribution of narcotics.   In some of the phone calls that the agents intercepted between HILL and LaQueecha, arrangements were made to obtain methamphetamine from LaQueecha for the purpose of distributing to others.

f.   On September 15, 2017, while monitoring one of the phones being utilized by LaQueecha, agents intercepted a text message from HILL.   HILL  contacted LaQueecha that day and stated "Hey I need to see Mike Vick today if possible ok."

2

Investigators knew through previous drug investigations that HILL was asking
LaQueecha if she could supply him seven grams of methamphetamine.

g.  On September 27, 2017, HILL and LaQueecha had a conversation in which
HILL inquired as to whether or not LaQueecha had been resupplied.  LaQueecha
stated that she had but asked if HILL could wait until the next day to pick up the
drugs.  HILL then stated that he would wait but had completely sold out of his
supply in order to have enough cash to give LaQueecha for more narcotics.
LaQueecha relinquished and stated that he could come over that night.

h.  On November 28, 2017, HILL sent the following text to LaQueecha:  "Is beans
in or Mike Vikey?"  LaQueecha replied "Mike Vick in town but beans will be here
in a couple of days."  LaQueecha was telling HILL that she has methamphetamine
but is still waiting on the pills.  HILL then states that he will come to her house
today to which she replied that if he does, he must come soon.

i.  On January 31, 2018, HILL was arrested and interviewed by agents with the
FBI at the Washington County Detention Center.  Subsequent to being advised of
and waiving his <u>Miranda</u> rights, HILL provided a statement wherein he admitted to
getting narcotics from LaQueecha Nicholson.

j.  Based on the nature of the investigation, the intercepted phone calls, the
surveillance conducted by the FBI, the statements of the defendant, as well as the
statements of co-conspirators, the government could prove that the defendant in
this case, DERRICK HILL, conspired with the Nicholsons in the distribution of
methamphetamine in the Western District of Arkansas.

(ECF No. 106 at 2-4).

At the change of plea hearing, Hill agreed with and admitted to each of the above facts.

(ECF No. 238 at 29).  The guilty plea was accepted by the Court[1] and the Court deferred ruling

on the plea agreement until a presentence investigation was performed.  *Id.* at 30.

Hill's Initial Presentence Report (PSR)(ECF No. 127) was filed on July 23, 2018.  Neither

Hill nor the Government had any objections to the PSR.   (ECF Nos. 148 & 162).   The Final PSR

was filed on August 24, 2018.  (ECF No. 163).  Hill's counsel filed a sentencing memorandum

(ECF No. 165) asking for a downward adjustment, traditional departure, and variance from the

---

[1] United States District Judge Timothy L. Brooks presiding.

sentencing guidelines.    Hill's counsel argued that a sentence of 60-months would be just punishment, promote respect for the law, avoid unwarranted sentencing disparities, and satisfy the other sentencing purposes of 18 U.S.C. § 3553(a) better than would a sentence suggested by the guidelines.    *Id.*    The guideline offense level, after a 3-point reduction for acceptance of responsibility, was 23.    Hill's criminal history category was VI.    This resulted in a guideline range of 92 to 115-months.    (ECF No. 163 at 26).

Hill appeared for sentencing on September 11, 2018.    (ECF No. 173).    He was sentenced to 72 months imprisonment, 3-years supervised release, and a $100 special assessment.    Counts 12-14 and 15 were dismissed.    (ECF No. 174).    Judgment was entered the following day. Hill did not file a direct appeal.    The instant § 2255 motion was filed on April 11, 2019.

## II.  DISCUSSION

### A.  GROUNDS FOR RELIEF

As grounds for relief, Hill asserts:   (1) counsel was ineffective in advising him to plead to Count 1 of the indictment when Hill was only involved in the distribution of cocaine, was a minor participant in the conspiracy, and should not have been held accountable for the methamphetamine; (2) the Court erred in failing to "consider sentence disparity before imposing a greater sentence unto Hill who was no more than a pawn in the conspiracy and was a minor role participant;" Hill also adds that his counsel was ineffective in failing to raise and preserve the issue of sentencing disparity; (3) Hill is actually innocent of the crime of conspiracy to distribute methamphetamine; and (4) the Court erred in not considering an adjustment for minor or minimal participation.    Hill also adds that his counsel was ineffective in failing to ask for a further reduction of the offense level under §§ 3B1.2 and 2D1.1(a)(3) of the United States Sentencing

4

Guidelines.

## B.  SECTION 2255

Section 2255(a) allows "[a] federal prisoner in custody under sentence by a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  "Relief under [§] 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice."  *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

## C.  INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

The Court evaluates ineffective assistance of counsel claims brought under § 2255 using the standards set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on his ineffective assistance of counsel claims, Hill must prove, by a preponderance of the evidence, two related but independent issues.  First, Hill must show that counsel's performance was so deficient so as to not constitute counsel as guaranteed the defendant by the Sixth Amendment.  *Id.* at 687.  Second, Hill must show that counsel's deficient performance materially and adversely prejudiced the outcome of the case.  *Furnish v. United States of America*, 252 F.3d 950, 951 (8th Cir. 2001).

With respect to the first prong, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell

5

below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The Supreme

Court instructed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction and adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689. A reviewing court "should recognize that counsel is strongly presumed to have

rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment." *Id.* at 690. "The relevant question is not whether counsel's choices

were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481

(2000).

With respect to the second prong, to prove an error was prejudicial Hill must establish that

"there is a reasonable probability that, but for counsel's unprofessional errors, the results of the

proceedings would have been different." *Strickland*, 466 U.S. at 694. "[N]ot every error that

conceivably could have influenced the outcome undermines the reliability of the result of the

proceeding." *Id.* at 693.

**D. GROUND ONE—INEFFECTIVE ASSISTANCE OF COUNSEL—GUILTY PLEA**

Hill argues that he was abandoned by his counsel "during the course of the proceedings

and that due to such aband[o]nment" Hill ended up pleading guilty to a conspiracy to distribute

methamphetamine—a drug he now says he never distributed. (ECF No. 235 at 2). Specifically,

Hill argues his counsel knew the only drug he distributed was cocaine as set forth in Counts 12-14.  *Id.*  Hill maintains he should not have been held accountable for the methamphetamine, and had he not been, he would have had a lower base offense level.   Hill also argues he was a minor player in the conspiracy, not becoming involved in it until November of 2017, while others had been involved in the conspiracy as early as September 1, 2016.[2]  *Id.*  Hill maintains his counsel should have filed a motion for an evidentiary hearing on the drugs Hill possessed in the conspiracy.  Hill now maintains he was actually innocent of having conspired with others relating to the methamphetamine.   He admits his involvement with cocaine.   In sum, Hill argues that his guilty plea was involuntary by reason of ineffective assistance of counsel.

In the addendum to his motion, Hill asks the court to consider the fact that he was in special education classes, was diagnosed with Attention Deficit Hyperactivity Disorder, and quit school in the tenth grade.   (ECF No. 244 at 1).   Further, he states that at the "time of this instant matter" he had been prescribed pain medications including oxytocin, oxycodone, oxymorphone, and Xanax for anxiety.   *Id.*   He argues that he did not have the necessary mental state to engage in a conspiracy to distribute methamphetamine and was advised that a guilty plea would only subject him to imprisonment of 12 to 36 months.   *Id.* at 1-2.   Further, he asserts that he was threatened with being imprisoned until his daughter[3] turned 25 unless he entered the guilty plea.   *Id.*   He maintains that he wanted to write the judge to challenge the methamphetamine charge and to disclose the FBI's threats at the interrogation.   *Id.* at 2.   Hill maintains his attorney told him that a letter would only "piss off the judge" and result in Hill's being given a harsher sentence.   *Id.*

---

[2] Hill erroneously lists the date as January 1, 2016.  (ECF No. 235 at 2).  However, the indictment provides the starting date of the conspiracy as "early as September 1, 2016."   (ECF No. 1).   Elsewhere in his brief, Hill uses the correct date.

[3] Hill's daughter was eleven months old at the time of the change of plea hearing.   (ECF No. 238 at 5).

During the plea hearing, after the Assistant United States Attorney (AUSA) recited the factual basis for the plea, Hill maintains his acknowledgement was only "to confirm it was what he was charged with and not what actually happened." (ECF No. 244 at 3). Hill contends he "did not understand the AUSA to be infer[r]ing anything of a factual nature." *Id.* Hill maintains "the courts failure to allow Mr. Hill to testify and thereby satisfy i[t]self of the facts but by allowing the AUSA's trickery and m[a]nipulation of a known learning disabled man was a miscarr[i]age of justice." *Id.*

The Government contends the record does not support Hill's claims. (ECF No. 240 at 7-12). The Government argues Hill will not be able to demonstrate his guilty plea was not knowingly and voluntarily entered. *Id.*

In general, entry of a guilty plea waives a defendant's right to relief under § 2255 other than those issues related to jurisdiction. In other words, "[a] valid guilty plea . . . operates as a waiver of all non-jurisdictional defects or errors." *United States v. Staples*, 435 F.3d 860, 864 (8th Cir. 2006)(internal quotation marks and citation omitted).

> [A] guilty plea operates as a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

However, all "defendants facing felony charges are entitled to the effective assistance of competent counsel." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). Therefore, "a defendant who pleads guilty upon the advice of counsel 'may . . . attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was

8

not within the standards" set forth in *Strickland* and *McMann*.   *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985).   "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"   *Hill*, 474 U.S. at 56 (*quoting North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). When a defendant is "represented by counsel during the plea process and enters his plea upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"

In the context of a guilty plea, the Supreme Court has said that "dispositions by guilty plea are accorded a great measure of finality" and "[s]olemn declarations in open court carry a strong presumption of verity.   The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."   *Blackledge v. Allison*, 431 U.S. 67, 71, 74 (1977)(citations omitted).

Hill's deficient performance arguments are directly undermined by a review of the plea agreement and the transcript of the change of plea hearing.   The plea agreement specifies that Hill was agreeing to plead guilty to Count 1--conspiracy to distribute methamphetamine.   (ECF No. 106 at 1).   The factual basis set forth in the plea agreement is quoted above.   Hill specifically admitted to committing each of the elements of the crime of conspiracy to distribute methamphetamine as set forth in Count 1 and did not dispute the facts as set forth in the agreement. *Id.* at 2-4.

In the plea agreement, Hill made the following representations:

a.   The defendant has read this agreement (or has had this agreement read to him) and has carefully reviewed every part of it with defense counsel.

b.   The defendant fully understands this plea agreement and is not under the

9

influence of anything that could impede defendant's ability to fully understand this
plea agreement.

c.   No promises, agreements, understandings, or conditions have been made or
entered into in connection with the decision to plead guilty except those set forth in
this plea agreement.

d.   The defendant is satisfied with the legal services provided by defense counsel
in connection with this plea agreement and matters related to it.

e.   The defendant has entered into this plea agreement freely, voluntarily, and
without reservation and the defendant's desire to enter a plea of guilty is not the
result of threats or coercion directed at the defendant or anyone connected with the
defendant.

(ECF No. 106 at 11).   Counsel also represented that the plea was an informed and voluntary one.

*Id.* at 12.

At the start of change of plea hearing, Hill was advised of the following ground rules:   (1)
if he gave a false response to any of the Judge's questions it could result in additional charges
being brought against him; (2) if he did not understand all of the Judge's questions, to just say so
and the Judge would repeat the question, rephrase the question, or give further explanation; and
(3) he was free to visit with his counsel before answering any questions and if he wanted to do so
the Judge would pause and give Hill a chance to do so.   (ECF No. 238 at 3).   Hill indicated he
understood these ground rules.   *Id.*   At this point, Hill was sworn in.   *Id.* at 4.

Hill was questioned regarding his background including the fact that he had been in special
education, had been diagnosed with ADHD, and had taken Ritalin.   (ECF No. 238 at 6-7).   Hill
testified that he worked as a cook and had his own business license.   *Id.* at 5.   Hill testified that
the only medications he was taking at that time were insulin for diabetes and high blood pressure
medication.   *Id.* at 6.   He also indicated that in the past he had taken medication for anxiety but
had not done so in some time.   *Id.* at 8.   Hill represented that he had not taken any medication

10

that would interfere with his ability to understand the Judge's questions. *Id.* Hill made no mention of being on pain pills of any type. *Id.* at 6-8.

Hill was questioned to make sure he understood a guilty plea resulted in his giving up the right to trial and that he had the right to persist in his not guilty plea. (ECF No. 238 at 9). The Judge then explained in greater detail the rights Hill would be giving up by pleading guilty. *Id.* at 9-11. Hill affirmatively stated that he understood each of the rights he was giving up. *Id.*

Hill testified that he was pleading guilty to conspiracy to distribute methamphetamine; his counsel had explained the charges; his counsel had answered all questions he had; and he fully understood the nature of the charge. (ECF No. 238 at 9, 12). His counsel then indicated that he had spent a number of hours with Hill explaining things and made sure he went through things slowly because of Hill's learning disability. *Id.* at 13. The Judge then went through the statutory maximums for the charge of conspiracy to distribute methamphetamine. *Id.*

Hill denied that he had been forced to plead guilty or threatened or harm threatened to a loved one. (ECF No. 238 at 14). Hill affirmed that his desire to plead guilty was done voluntarily and of his own free will. *Id.* Hill was then questioned about the plea agreement and whether he had an opportunity to meet with his counsel and have him explain the contents of the agreement before he signed it. *Id.* Hill affirmatively indicated he had read the entire plea agreement, conferred with counsel, and had all his questions about the plea agreement answered. *Id.* at 15-16

The Judge explained the finality of the Court's acceptance of a guilty plea. (ECF No. 238 at 18). Hill indicated he understood. *Id.* Hill testified his counsel had explained how the United States Sentencing Guidelines would be used at sentencing. *Id.* at 19. The Judge then explained

11

the term relevant conduct and that it would include not just the factual basis for Count 1 but for the other Counts 12-14 and 15 as well. *Id.* at 23-25. It was explained that relevant conduct would include his background and characteristics as well as his criminal history. *Id.*

After this thorough explanation of his rights and questioning by the Court, the AUSA read the factual basis set forth in the plea agreement. (ECF No. 238 at 25-28). Hill represented that he understood those were the facts the Government contended it could prove if the case went to trial and that he agreed with and admitted each of the facts. *Id.* at 28-29. Hill's counsel agreed that the Government could prove those facts if the case went to trial. *Id.* at 29. At no time did Hill suggest in any way that he was having any problem understanding the proceedings, or the charges against him, was dissatisfied with counsel, or had been threatened or coerced in any manner. He made no claim that his learning impairment prevented him from understanding the process. And, as can be seen from the PSR, Hill had more than a passing familiarity with the criminal process. (ECF No. 163 at 11-24 setting forth extensive criminal history). The PSR also sets forth seven separate occasions [4] upon which Hill contacted LaQueecha to purchase methamphetamine. *Id.* at 6-7. Hill filed no objections to the PSR and did not object to the facts as set forth in the PSR at the sentencing hearing. (ECF No. 239). Hill's argument that he did not understand the import of pleading guilty to conspiracy to distribute methamphetamine and did not admit to having possessed the drug methamphetamine are "in the face of the record . . . wholly incredible." *Blackledge,* 431 U.S. at 71, 74 (1977)(citations omitted).

Likewise, Hill's argument that he was misled into believing the sentence would be no more than 12 to 36 months is not borne out by the record. A criminal defendant's "right to be apprised

---

[4] September 15, 2017; September 20, 2017; September 27, 2017; September 29, 2017; October 4, 2017; November 28, 2017; November 30, 2017 (ECF No. 163 at 6-7).

of the court's sentencing options . . . requires only that the court inform the defendant of the applicable mandatory minimum and maximum sentences." *Thomas v. United States*, 27 F.3d 321, 326 (8th Cir. 1994). "For a plea to be voluntary . . . a defendant need not understand precisely how the sentencing guidelines will apply to his case. A plea is knowing and voluntary if the district court informs the defendant of the minimum and maximum statutory penalties and the court's authority to sentence within that range." *United States v. Guardado*, 863 F.3d 991, 993 (8th Cir. 2017). Here, the plea agreement set forth the minimum and maximum statutory penalties, advised Hill that relevant conduct would be considered, and informed him of the court's authority to sentence within the statutory terms. At the change of plea hearing, Hill was taken through this information step by step to ensure the advice was sufficient to establish a knowing and voluntary plea.

Moreover, Hill has made no showing that if he had known of the guideline range, he would have gone to trial, which is required to demonstrate ineffective assistance of counsel in connection with erroneous advice in connection with a plea agreement. *Hill*, 474 U.S. at 57. In fact, counsel argued for a below the guideline range sentence (60 months) and although the Judge did not go as low as urged by counsel, the Judge did sentence well below (72 months) the guideline range of 92-115 months. Hill has not asserted any credible basis for challenging the validity of his guilty plea based on the advice of counsel. Hill has failed to demonstrate that he would be entitled to relief under the *Strickland* standard.

### E.   GROUND TWO--SENTENCING DISPARITY ERROR--AIDED BY INEFFECTIVE ASSISTANCE OF COUNSEL

Hill maintains that the Judge failed to "consider sentencing disparity before imposing a great[e]r sentence unto Hill who was no more than a pawn in the conspiracy and was a minor participant" than imposed on other co-conspirators.   (ECF No. 235 at 5).    Hill also argues his counsel was "deficient and prejudiced Hill because of counsel's failure to raise and preserve an argument for a sentence disparity."   *Id.*

Further, as the Government accurately points out, Hill was the first of the co-conspirators to be sentenced.   Hill's contention that LaQueecha was sentenced to only 62 months, Johnny Nicholson to only 50 months, and Rubin Morrow to even less is in error.   LaQueecha's sentencing hearing was on September 14, 2018.   (ECF No. 179; 18-cr-50008-001).   She was sentenced to 100 months on Counts 1 and 10 to run concurrently.   (ECF Nos. 179 & 182).   Johnny Nicholson's sentencing hearing was held on October 1, 2018.   (ECF No. 193; 18-cr-50008-004).   He was sentenced to 72 months on Count 5.   (ECF No. 194).   Jeffrey Hollingsworth's sentencing hearing was held on October 10, 2018.   (ECF No. 198; 18-cr-50008-006).   He was sentenced to 87 months on Count 1.   (ECF No. 202).   Derrick Nicholson's sentencing hearing was held on October 16, 2018.   (ECF No. 210; 18-cr-50008-002).   He was sentenced to 240 months on Count 1 and 250 months on County 4 to run concurrently.   (ECF Nos. 210 & 211).   Rubin Morrow's sentencing hearing was held on November 9, 2018.   (ECF No. 214; 18-cr-50008-003).   He was sentenced to 135 months on Count 1.   (ECF No. 216).

As noted above, Hill's counsel strongly advocated for a below guidelines range sentence for Hill.   Counsel filed a sentencing memorandum and argued vigorously during the sentencing

14

hearing for a below range sentence.   (ECF Nos. 165 & 239).   The guideline range was 92-115 months.   The Judge sentenced Hill to 72 months, which was significantly less than the lower end of the guideline range (92 months).

Hill's counsel could not have argued that there was a sentencing disparity between Hill's sentence and his co-defendants, as none of them had yet been sentenced.   Hill has failed to show the existence of a sentencing disparity or satisfy the deficient performance or prejudice prongs of *Strickland.*

## F.   GROUND THREE—ACTUAL INNONCENCE—FAILURE OF COUNSEL TO INVESTIGATE THE EVIDENCE

Hill maintains he is "factually innocent" of conspiracy to distribute methamphetamine. (ECF No. 235 at 7).   Hill asserts that he specifically told his counsel the only drug he had any involvement with was cocaine.   *Id.*   If counsel had investigated, Hill maintains counsel would have discovered that there was no evidence that would have shown Hill was involved with methamphetamine.   *Id.*   Hill contends he was prejudiced by his counsel "having Hill enter a plea of guilty to [C]ount One of the indictment knowing [H]ill was factually-actually innocent of having conspired with others relating to Methamphetamine."   *Id.*   If not for counsel's errors, Hill contends he would not be subjected to 72-months of imprisonment.

"The failure to raise an issue on direct appeal acts to bar a petitioner from raising that issue for the first time in a section 2255 motion, and this rule applies equally when the conviction was entered pursuant to a guilty plea."   *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997)(citation omitted).   Procedural default may be excused if Hill can show both (1) a cause that excuses the default, and (2) actual prejudice from the errors of which he complains.   *United States*

15

*v. Frady*, 456 U.S. 152, 168 (1982).   Actual innocence may also excuse procedural default.
*McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001).

Hill contends his procedural default should be excused because of ineffective assistance of
counsel.   (ECF No. 235 at 8).   *Strickland* requires Hill to show both constitutionally deficient
performance and that the deficient performance prejudiced Hill.   "Where a conviction was entered
on the basis of a guilty plea, the second part of the test is slightly modified.   In the guilty plea
context, the convicted defendant must demonstrate that 'there is a reasonable probability that, but
for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"
*Matthews*, 114 F.3d at 114 (*quoting Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).   Hill "cannot show
cause and prejudice because he could have raised this argument at the time of his guilty plea."
*McNeal*, 249 F.3d at 799 (*citing Dejan v. United States*, 208 F.3d 682, 685 (8th Cir. 2000)).

"In order to establish a valid claim of actual innocence, a defendant must show factual
innocence, not simply legal insufficiency of evidence to support a conviction."   *McNeal*, 249 F.3d
at 749.    To succeed on his § 2255 motion, Hill must show, in light of all the evidence, that "it is
more likely than not that no reasonable juror would have convicted him."   *Schlup v. Delo*, 513
U.S. 298, 327-328 (1995).   "The allegations must be supported by 'new reliable evidence—
whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical
evidence—that was not presented at trial.'"   *Jimerson v. Payne*, 957 F.3d 916, 929 (8th Cir.
2020)(*quoting Schlup*, 513 U.S. at 324).   A habeas petitioner does not meet the actual-innocence
gateway "unless he persuades the district court that, in light of the new evidence, no juror, acting
reasonably, would have voted to find him guilty beyond a reasonable doubt."   *McQuiggin v.
Perkins*, 569 U.S. 383, 386 (2013)(citations omitted).

16

Hill points to no evidence that would demonstrate his factual innocence.  *Silk v. United States*, 955 F.3d 681, 683 (8th Cir. 2020)(actual innocence means factual innocence).  He makes no argument that exculpatory evidence was withheld.  Instead, he makes the bare allegation that that he was only guilty of the counts dealing with the distribution of cocaine.

Despite thorough questioning at the change of plea hearing and the sentencing hearing, Hill did not raise the issue of his actual innocence of the charge of conspiracy to distribute methamphetamine.  In fact, he admitted to the factual basis for the plea, which included seven instances when Hill purchased methamphetamine.  Hill's arguments contradict the stipulated facts in his signed plea agreement.  As discussed above, Hill's plea was both voluntary and knowing.  Based on the stipulated facts, the Government could prove that Hill was involved in the distribution of methamphetamine.   In fact, Hill does not deny he was involved in a conspiracy to distribute controlled substances; Instead, he argues he was only a minor or minimal participant in the conspiracy and only as to the drug cocaine.   Hill falls short of making a showing of factual innocence.  Hill's challenge to the sentence on this ground is, therefore, procedurally defaulted.

**G.   GROUND FOUR—THE COURT ERRED IN NOT CONSIDERING A MINOR ROLE REDUCTION--AIDED BY COUNSEL'S INEFFECTIVE ASSISTANCE**

Hill argues the Court erred in failing to consider "a reduction of sentence pursuant to United States Sentencing Guidelines . . . §§ 3B1.2 and 2D1.1(a)(3) which allows the sentencing court to reduce a . . . defendant's sentence offense level if he was a minor or minimal participant in the offense."  (ECF No. 235 at 6).   A § 2255 motion is not a substitute for regular appellate review, *i.e.,* direct appeal. *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993); *see also Sunal v. Large*, 332 U.S. 174, 178 (1947)("in federal courts . . . the general rule is that the writ of habeas

17

corpus will not be allowed to do service for an appeal"). Hill procedurally defaulted this claim to the extent it is not based on ineffective assistance of counsel.

In this regard, Hill argues "his counsel abandoned him during the sentencing phase and caused him prejudice to the sentence he received, that would have been less if counsel's performance would have been effective rather than deficient." (ECF No. 235 at 7).

**(1).    Section 3B1.2 Mitigating Role Adjustment**

Section 3B1.2[5] provides for a "mitigating role" adjustment[6] or reduction to the offense level for defendants who are minimal or minor participants in a case involving multiple participants. Specifically, the section provides:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a) If the defendant was a minimal participant in any criminal activity, decrease by **4** levels.
>
> (b) If the defendant was a minor participant in any criminal activity, decrease by **2** levels.
>
> In cases falling between (a) and (b), decrease by **3** levels.

U.S.S.G. § 3B1.2. The application notes 3(A) and 3(B) provide guidance on when this section applies:

> (A). **Substantially Less Culpable than Average Participant.**—This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity.
>
> A defendant who is accountable under §1B1.3 (Relevant Conduct) for only the conduct in which the defendant personally was involved and who performs a

---

[5] The 2016 United States Sentencing Commission Guidelines Manual was used in preparing the PSR. (ECF No. 163 at 10).

[6] "Adjustments are changes to an offense level within the Guidelines. Departures, on the other hand, are sentences imposed outside the Guidelines." *United States v. Bush*, 352 F.3d 1177, 1183 (8th Cir. 2003)(internal quotation marks and citation omitted).

limited function in the criminal activity may receive an adjustment under this guideline. . . .

(B).   **Conviction of Significantly Less Serious Offense.**—If a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily would not be warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense. . . . .

U.S.S.G. § 3B1.2, comment. (n. 3(A) & 3(B)).

Application note 3(C) stresses that the determination as to whether to apply this adjustment is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case."    U.S.S.G. § 3B1.2, comment. (n. 3(C)). Application note 4 provides that subsection (a) is "intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group.   Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant."   U.S.S.G. § 3B1.2, comment. (n. 4).

The Eighth Circuit has made clear that "merely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was 'deeply involved' in the offense."   *United States v. Bush*, 352 F.3d 1177, 1182 (8th Cir. 2003). "Minimal participants are those with 'insignificant' involvement in the criminal activity."   *United States v. Goodman*, 509 F.3d 872, 875 (8th Cir. 2007).

The PSR details seven occasions in which Hill requested and/or purchased methamphetamine, one occasion where he purchased cocaine, and three occasions where he sold cocaine.  (ECF No. 163 at 6-8).  When Hill's residence was searched, a bag with cocaine was

19

found, as well as digital scales, GNC inositol powder, which is commonly used as a cutting agent, several bags containing cocaine residue, and a cocaine test kit. *Id.* at 8. Additionally, a firearm was found that was located in close proximity to the cocaine and digital scales. *Id.*

Having pled guilty to conspiracy to distribute methamphetamine, Hill was held responsible for not just the grams of cocaine he sold and/or possessed, but also for the grams of methamphetamine mixture. (ECF No. 163 at 9). Knowing that the Government could prove both Hill's culpability and the amount of drugs involved, his counsel could have reasonably determined that asking for a mitigating role reduction would prove futile. *Evans v. Luebbers*, 371 F.3d 438, 445 (8th Cir. 2004)(holding that "strategic and tactical decisions made by counsel, though they may appear unwise in hindsight, cannot serve as the basis for an ineffective-assistance claim under *Strickland*"). A tactical decision does not render counsel's performance constitutionally deficient. *Strickland*, 466 U.S. at 689 (counsel's selection of a strategy cannot be considered ineffective assistance simply because it proved unsuccessful); *Sanders v. Trickey*, 875 F.2d 205, 209-210 (8th Cir. 1989)(counsel afforded broad latitude to make strategic and tactical choices regarding the appropriate action to take or refrain from taking). Moreover, Hill has failed to demonstrate that there was a reasonable probability that but for counsel's error, the result of the sentencing would have been different.

As noted above, counsel vigorously argued for a below the guidelines range sentence—an effective strategy which resulted in a 20 month decrease on Hill's sentence. Counsel chose to emphasize Hill's qualities favoring a below guidelines sentence rather than argue for a minimal role adjustment. "The choice to focus on 'some issues to the exclusion of others' carries with it 'a strong presumption that [counsel] did so for tactical reasons rather than through sheer neglect.'"

20

*Guzman-Ortiz v. United States*, 849 F.3d 708, 714 (8th Cir. 2017)(*quoting Yarborough v. Gentry*, 540 U.S. 1, 8, (2003))   Hill has failed to overcome the strong presumption that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."   *Strickland*, 466 U.S. at 690.

### (2).   § 2D1.1—Minor Role Reduction/Mitigating Role Cap

The guidelines for offenses under 21 U.S.C. § 841(a)(1) is found in U.S.S.G. § 2.D1.1. Hill was held accountable for 102.84 kilograms of marijuana equivalent.   (ECF No. 163 at 10). According to the drug quantity table, this placed Hill's base offense level at 24.   U.S.S.G. § 2D1.1(c)(8).   Hill's offense level increased by two because of the firearm.   (ECF No. 163 at 10). Hill's offense level was decreased by 3 for acceptance of responsibility, resulting in a total offense level of 23.   *Id.* at 11.   If a defendant received an adjustment under § 3B1.2 **and** the base offense level is 32 or above, the offense level may be decreased by an additional two points under U.S.S.G. § 2D1.1(a)(5).[7]   *See also United States v. Miller*, 698 F.3d 699, 708 (8th Cir. 2012)(mitigating role cap applies if the resulting offense level is greater than level 32).   As Hill's offense level was 23, he was not eligible for a minor role reduction.

Further, as discussed above in some detail, counsel's action in choosing to argue for a sentence below the guideline range constitutes trial strategy and, in fact, was effective in this case, resulting in a sentence 20-months below applicable guideline sentencing range.   Hill cannot establish his counsel's performance was deficient or that he was prejudiced.

---

[7] The minor role reduction was previously 2D1.1(a)(3).   Supplement to U.S.S.G. Manual 2010 (Effective 11/1/2010).

### III.   CONCLUSION

Based upon the foregoing, the undersigned hereby recommends that Hill's motion to vacate filed pursuant to 28 U.S.C. § 2255 be DENIED and his petition be DISMISSED.

An appeal may not be taken in this matter unless the Court issues a certificate of appealability, which shall be issued only if "the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. §§ 2253(b) & (c)(2); *see Copeland v. Washington*, 232 F.3d 969, 977 (8th Cir. 2000).   A "substantial showing" is a showing that "issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further."   *Randolph v. Kemna*, 276 F.3d 401, 403 n.1 (8th Cir. 2002)(quotation marks and citation omitted).   Based upon the above analysis of Hill's § 2255 motion, the undersigned does not believe that there is any basis for the issuance of a certificate of appealability and, therefore, recommends that a certificate of appealability be denied.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 8th day of July 2020.

/s/ *Erin L. Wiedemann*
_____
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE